IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MITCHELL LAMBERT,                  *
                                   *
       Plaintiff,                  *
                                   *
       v.                          *        CV 124-133
                                   *
SHERIFF ALFONZO WILLIAMS,          *
WILLIAM LOOMER, and ALLEN          *
CRISPIN, in their individual       *
capacities,                        *
                                   *
       Defendants.                 *
                                   *

_____

**O R D E R**

_____

Before the Court are Defendants' motion to dismiss or stay
this action (Doc. 15) and motion to stay the proceedings pending
resolution of their motion to dismiss (Doc. 16).  For the following
reasons, Defendants' motion to dismiss or stay (Doc. 15) is **GRANTED
IN PART AND DENIED IN PART**, and Defendants' motion to stay (Doc.
16) is **DENIED AS MOOT**.

**I. BACKGROUND**

Plaintiff seeks damages for his allegedly wrongful arrest and
detention related to Burke County Sheriff's Office's ("BCSO")
investigation into the disappearance and presumed death of Burke
County resident Simon Powell.  (Doc. 9, at 3.)  Plaintiff, through
his amended complaint and attached exhibit, alleges the following.

(Id.; Doc. 9-2.)  Powell was last seen at his home on June 1, 2016, and his truck was found, burned, on a dirt road early the next morning.  (Doc. 9-2, at 4-5.)  BCSO investigated Powell's disappearance but ultimately uncovered no fruitful leads.  (Doc. 9, at 3.)  Six years later, in June 2022, BCSO reopened Powell's case as a cold case.  (Id.)  The case was assigned to Defendants William Loomer and Allen Crispin, both of whom were Sergeant Investigators with BCSO.  (Id.)  Defendant Alfonzo Williams, the Burke County Sheriff, publicized BCSO's renewed investigation and offered a $30,000 reward to anyone who could assist in finding Powell.  (Id. at 10.)  Defendants Loomer and Crispin's investigation led them to a woman, Stacey Welch, who claimed to have knowledge about Powell's disappearance.  (Id. at 4.)

Defendants Loomer and Crispin interviewed Welch multiple times on or around July 12, 2022.  (Id.)  During the interview, Welch implicated herself, Plaintiff, and two other men in Powell's kidnapping and murder.  (Id.)  She also described various physical locations related to the crimes; however, she did not describe Powell's truck being burned.  (Id.; Doc. 9-2, at 12.)  Her interview statements were ever-changing and conflicting, and one of the interviewing Defendants questioned her sanity.  (Doc. 9, at 4, 6.)  Welch's attorney later averred she had been high on heroin at the time of the interviews.  (Id. at 5-6.)  After the interviews, Defendant Williams authorized the use of BCSO resources to search

2

the physical locations Welch described.   (Id. at 4.)   But Defendants Loomer and Crispin, along with other BCSO personnel, could not locate any evidence corroborating Welch's statements. (Id.)   Defendant Williams was informed of Welch's inconsistent statements and the fruitlessness of the search.   (Id. at 4, 9.)

Despite the incredible nature of Welch's statements and the lack of physical evidence, Defendant Crispin filed a report stating, "Stacey Welch . . . and Mitchell Lambert . . . were complicit in the kidnapping, armed robbery, and murder of Simon Powell," and Defendant Loomer proceeded to seek Plaintiff's arrest.   (Id. at 6.)   Defendant Loomer applied for three arrest warrants for Plaintiff, which a Burke County magistrate judge issued on July 19, 2022.   (Id.)   The affidavits Defendant Loomer submitted provided the following as a basis for probable cause:

> Mitchell Lambert did intentionally, willfully, and with malice aforethought, unlawfully kill and murder and cause the death of one Simon Powell, a human being, by kidnapping Mr. Simon Powell, forcing him into a truck and transporting him to another location. Mitchell Lambert then removed him from the truck and took part in the Armed Robbery and Murder of Mr. Powell before Mr. Powell was disposed of in a body of water. This was witnessed by co-defendant, Stacey Welch, who confessed to investigators on July 12th 2022.

(Id. at 7.)   Plaintiff was arrested on July 21, 2022, and booked into the Burke County Detention Center ("BCDC") the next day.   (Id. at 12.)

3

Once at BCDC, Plaintiff spoke with Defendant Williams directly. (Id.) Defendant Williams told Plaintiff he recognized Plaintiff because he knew his family. (Id.) When Plaintiff told Defendant Williams he had nothing to do with Powell's disappearance, Defendant Williams told Plaintiff he could not assist him and that multiple people had accused him. (Id.) Plaintiff was originally denied bond, and after ninety days in jail, his case had still not been heard by a grand jury. (Id. at 12-13; Doc. 9-2, at 16-17.) His attorney requested a bond reconsideration hearing pursuant to O.C.G.A. § 17-7-50, which mandates bail for incarcerated persons who are originally denied bail and not indicted by a grand jury within ninety days.[1] (Doc. 9-2, at 17-18.) At that hearing, held on November 10, 2022, Judge Craig of the Burke County Superior Court denied bond a second time. (Doc. 9, at 13; Doc. 9-2, at 18.) Plaintiff was ultimately held at BCDC, without an indictment, until June 16, 2023, because of his arrest under the warrant obtained by Defendant Loomer. (Doc. 9, at 12-13.)

On June 15, 2023, after working on the case against Plaintiff for the previous six to eight months, Assistant District Attorney Rex Myers ("ADA Myers") received the full case file from BCSO.

---

[1] "If the state refuses bail to an incarcerated person, then the state must present its case to a grand jury for indictment within 90 days. If the state fails to do this, then bail is mandatory." Rawls v. Hunter, 475 S.E.2d 609, 609 (Ga. 1996) (citation omitted) (interpreting O.C.G.A. § 17-7-50).

(Doc. 9-2, at 14, 16.)    After reviewing the file, ADA Myers requested a second bond reconsideration hearing, which was held the next day - June 16, 2023 - in front of Judge Craig.    (Id. at 13-14, 16; Doc. 9, at 13.)  During the hearing, ADA Myers described his review of the evidence against Plaintiff, including Welch's recorded interview statements, and addressed Welch's credibility issues and the lack of any corroborating evidence connecting Plaintiff to Powell's disappearance.    (Doc. 9, at 13-14; Doc. 9-2, at 4-10.)  ADA Myers stated that "any reasonable attorney would find that [Welch] has credibility issues with respect to her statement" because "her story continuously changed."  (Doc. 9-2, at 11-12.)    After summarizing the information Welch provided and BCSO's unsuccessful attempts to corroborate it, ADA Myers concluded, "The real essence of [Welch's] story is that her story continuously changes, over and over and over, about what she saw, what she didn't see. Was she there, was she not there?"  (Id. at 10.)

ADA Myers also noted that none of BCSO's evidence strengthened the case against Plaintiff; to the contrary, it pointed to other individuals who may have had a motive to kill Powell.    (Id. at 13-14.)    As a result, his "honest assessment of the evidence . . . [was] that it [was] not sufficient to go forward" with Plaintiff's prosecution.  (Id. at 16.)  ADA Myers informed Judge Craig he planned to meet with BCSO personnel and the District

5

Attorney to review the evidence and discuss whether additional investigative steps were warranted. (_Id._ at 14.) However, ADA Myers "d[id] not anticipate any swift action forward on this case at this point with respect to [Plaintiff or Welch]." (_Id._) Judge Craig found, based on ADA Myers's representations, that the court was "actually lacking even the information that could have led to the issuance of a warrant." (_Id._ at 21.) Plaintiff was released on bond that day, after spending almost eleven months in custody on unindicted charges. (Doc. 9, at 14.)

Plaintiff filed this action in the Superior Court of Burke County on July 19, 2024, asserting claims arising out of his arrest, detention, and prosecution for Powell's murder. (Doc. 1, at 1; Doc. 1-1.) Defendants removed to this Court on August 16, 2024, based on federal question jurisdiction. (Doc. 1, at 3.) Plaintiff filed his amended complaint (the "Complaint") on September 6, 2024. (Doc. 9.) The Complaint asserts against all Defendants claims under 42 U.S.C. § 1983 for false arrest (Count One), false imprisonment (Count Two),[2] and malicious prosecution (Count Three), and under Georgia law for false imprisonment (Count Four), false arrest (Count Five), malicious prosecution (Count

---

[2] The Complaint identifies Count One as a claim for "unreasonable seizure" and Count Two as one for "unlawful detention." (Doc. 9, at 17, 20.) Because both Parties' briefs and cited caselaw refer to these as claims for "false arrest" and "false imprisonment," respectively, the Court labels them as such herein. (_See_ Doc. 15, at 5, 7; Doc. 20, at 10-11, 14-15.)

6

Seven),[3] intentional infliction of emotional distress (Count Eight), attorney fees and costs (Count Nine), and punitive damages (Count Ten). (Id. at 17-30.)

On September 20, 2024, Defendants moved to dismiss Plaintiff's claims or, in the alternative, stay the case under the Younger abstention doctrine. (Doc. 15.) The same day, Defendants moved to stay discovery pending resolution of their motion to dismiss. (Doc. 16.) Plaintiff consented to staying discovery pending the Court's ruling on the motion to dismiss but opposed Defendants' motion to dismiss or to stay the proceedings under Younger. (Docs. 19, 20.) Defendants replied in support of both motions. (Docs. 21, 22.) The deadline for further briefing having passed, Defendants' motions are ripe for review.

## II. YOUNGER ABSTENTION

The Court first addresses Defendants' motion to stay the case under the Younger abstention doctrine. (Doc. 15, at 3-5.)

### A. Legal Standard

In Younger v. Harris, 401 U.S. 37 (1971), "the Supreme Court held that a federal court should not act to restrain an ongoing state court criminal prosecution." Carter v. Dep't of Child. & Fams., No. 21-13128, 2022 WL 2921310, at *2 (11th Cir. July 26,

---

[3] The Complaint does not contain a numbered Count Six. For consistency, the Court mirrors the numbers assigned in the Complaint.

2022) (citation omitted).   Such abstention prevents "duplication
of legal proceedings" and reflects the principle that the federal
government should "vindicate and protect federal rights and
federal interests . . . in ways that will not unduly interfere
with the legitimate activities of the States." Younger, 401 U.S.
at 44.   Therefore, Younger abstention is appropriate if: "(1) state
judicial proceedings are ongoing and the relief sought by the
plaintiff would interfere with the state proceeding; (2) the
federal proceedings implicate important state interests; and (3)
there is an adequate opportunity to raise federal challenges in
the state proceedings." Carter, 2022 WL 2921310, at *2 (citations
omitted).   "But Younger abstention is not warranted if (1) there
is evidence of state proceedings motivated by bad faith, (2) the
state law being challenged is patently unconstitutional, or (3)
there is no adequate alternative state forum where the
constitutional issues can be raised." Parris v. Taft, 630 F. App'x
895, 898 (11th Cir. 2015) (citation and internal quotation marks
omitted).

## B. Discussion

Defendants assert the first element required to abstain under
Younger weighs in their favor because Plaintiff is being prosecuted
for Powell's murder and any decision by this Court on the merits
of this case could affect that ongoing criminal proceeding. (Doc.
15, at 3-5.)   Specifically, they argue an ongoing state proceeding

is established here by the fact that Plaintiff "is currently out on bond for criminal charges stemming from his arrest in this matter." (Id. at 4.)  To support this contention, Defendants point to a Georgia Court of Appeals opinion which found a bond hearing fell under the definition of "prosecution" in Georgia's malicious prosecution statute. (Id. (citing Sheffield v. Futch, 839 S.E.2d 294, 300 (Ga. Ct. App. 2020)).  Therefore, Defendants contend, because he appeared for a bond hearing, Plaintiff is the target of a prosecution – an ongoing state proceeding under Younger. (Id. at 4-5.)  Defendants further assert that "[a]ny decision on the merits in this matter, such as the existence of probable cause for Plaintiff's arrest, could affect Plaintiff's ongoing criminal proceeding." (Id. at 5 (citation omitted).)

Plaintiff argues Defendants cannot establish the first Younger factor because Plaintiff was never indicted and, in the alternative, because any proceedings against him have been voluntarily abandoned.[4] (Doc. 19, at 9.)

---

[4] Defendants urge the Court to not consider Plaintiff's Younger abstention argument because he raises it in response to Defendants' motion to stay the proceedings and incorporates it by reference in his response to Defendants' motion to dismiss or stay pursuant to Younger, thereby violating the Court's page-limit rule. (Doc. 22, at 1-2.)  While incorporation by reference is generally impermissible when it amounts to a back-door method of enlarging a page limit, see L.R. 7.1, SDGa., Defendants filed two contemporaneous motions asking the Court to stay the proceedings, and the Court will not disregard Plaintiff's arguments because he made what could amount to a reasonable mistake. Moving forward, however, the Parties will be held strictly accountable for compliance with Local Rule 7.1's page limit absent Court permission to the contrary.

The Court agrees with Plaintiff that, even if his bond hearing constitutes a "prosecution" under Georgia's malicious prosecution statute, there is no *ongoing* state proceeding as contemplated by *Younger* with which a ruling here could interfere. Several factors inform the Court's determination that any prosecution against Plaintiff is not "ongoing," beginning with the definition of the word itself. Merriam-Webster defines "ongoing" as "being actually in process" or "continuously moving forward." *Ongoing*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/ongoing (last visited June 3, 2025). Oxford English Dictionary similarly defines it as "continuous; that is in progress; . . . proceeding; developing." *Ongoing*, OXFORD ENGLISH DICTIONARY, https://doi.org/10.1093/OED/2418361159 (last visited June 3, 2025). While perhaps the *investigation* into Powell's disappearance has been continuously moving forward since Plaintiff was released on bond, Plaintiff pleads facts alleging the *prosecution* against him has not: he was released on bond in June 2023 and has yet to be indicted on any charges. (Doc. 9, at 12-13.) Under such facts, the Court is hard-pressed to find how it could consider the prosecution against Plaintiff to be "actually in process" or "continuous."

Defendants also make a general argument that "every other district court in the Eleventh Circuit - including this Court - has held that the *Younger* doctrine may apply in situations like

the one this Court currently faces." (Doc. 22, at 45 (citations omitted).) The Court has examined the cases Defendants proffer to support this contention and finds them notably distinguishable. Not one of them involves, much less finds against, a federal plaintiff arguing that a bond hearing alone, two years earlier, does not constitute an ongoing state proceeding under *Younger*. Several of them involve federal plaintiffs who, unlike here, either explicitly or implicitly conceded the existence of an ongoing state proceeding. *See, e.g., Clay v. Toombs Cnty. Sheriff's Off.*, No. 6:18-CV-92, 2020 WL 2858490, *4 (S.D. Ga. Mar. 3, 2020), *report and recommendation adopted*, No. 6:18-CV-92, 2020 WL 2858847 (S.D. Ga. June 2, 2020) ("It appears from the record, and the Court has no indication to the contrary, the state criminal proceedings against Plaintiff are ongoing."); *Ramey v. Georgia*, No. 4:10-CV-06, 2010 WL 786806, at *4 (M.D. Ga. Mar. 5, 2010) ("Plaintiff also seeks an injunction enjoining his prosecution in the underlying state case."); *Ballard v. Cail*, No. 1:22-CV-2, 2022 WL 16963246, at *1 (N.D. Fla. Nov. 16, 2022) (noting federal plaintiff alleged detectives "violated his constitutional rights during his ongoing prosecution"); *Sweeting v. Delorme*, No. CV 21-00132, 2021 WL 2008922, at *3 n.1 (S.D. Ala. Apr. 2, 2021), *report and recommendation adopted*, No. 1:21-CV-132, 2021 WL 2004790 (S.D. Ala. May 18, 2021) ("There is no suggestion in the complaint that the state court proceedings have terminated, and, indeed, the

11

Court's independent research of the Alacourt database reveals that the case is still pending."); Saffold v. McLeod, No. 1:19CV114, 2019 WL 2571158, at *1 (M.D. Ala. May 24, 2019), *report and recommendation adopted*, No. 1:19CV114, 2019 WL 2588470 (M.D. Ala. June 21, 2019) ("[Plaintiff] admits . . . that the [state] criminal case is still pending"). Here, by contrast, Plaintiff has neither implicitly nor explicitly conceded there is a pending state criminal case against him. Rather, he alleges he has never even been indicted for the relevant charges. (Doc. 9, at 15.)

In other cases Defendants cite, the federal plaintiffs "provided no reason [they] would be unable to raise [their] federal constitutional claims in the state courts." Thomas v. Spalding, No. 2:23-CV-107, 2024 WL 3153247, at *2 (S.D. Ga. June 3, 2024), *report and recommendation adopted*, No. 2:23-CV-107, 2024 WL 3152259 (S.D. Ga. June 24, 2024); see also Seigler v. Oglesby, No. 6:21-CV-59, 2021 WL 6061888, at *2 (S.D. Ga. Nov. 9, 2021). Because the *absence* of an ongoing state proceeding would be a reason the federal claims could not be raised in the state proceeding, those cases suggest the existence of an ongoing state proceeding was a settled issue. Here, there has been no state court proceeding in over two years in which Plaintiff could raise his federal claims, and Plaintiff argues there are no signs there will be one at any point. (Doc. 19, at 13.)

Yet another case relied on by Defendants involved a federal plaintiff whose state criminal conviction was already on appeal. Martin v. Bringham, No. 2:18-CV-2010, 2019 WL 575376, *1-2 (N.D. Ala. Feb. 12, 2019). Once again, the facts are distinguishable: not only has there been no conviction for Plaintiff to appeal, there has not even been an indictment. (Doc. 9, at 12.) Defendants ask the Court to find this action exemplifies a classic example of Younger abstention, but the Court finds the facts before it too far afield from Defendants' proffered cases to agree with their contention.

A final point that informs the Court's decision here is that the purported state criminal proceedings against Plaintiff apparently have yet to even be assigned a case number. In the transcript from the June 16, 2023 bond hearing, the caption reads: "Case No. [Unindicted]." (Doc. 9-2, at 1.) And Defendants have provided no evidence since this case was filed that the criminal proceedings against Plaintiff have progressed in any way since his release almost two years ago. Beyond posting bond in 2023, Plaintiff is under no more legal burden than any other potential suspect in the investigation into Powell's disappearance.

In sum, Defendants fail to show the existence of an ongoing state proceeding with which Plaintiff's civil case would interfere. Because this is a requirement for Younger abstention,

the Court **DENIES** Defendants' motion to stay this case pursuant to Younger.[5]

### III. MOTION TO DISMISS

The Court now turns to the merits of Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15.)

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal if the complaint fails to state a claim upon which relief can be granted. The Court tests the legal sufficiency of the complaint in considering a Rule 12(b)(6) motion to dismiss. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Rule 12(b)(6) works in tandem with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give

---

[5] Even if Defendants established the first two elements of Younger, the Court would still find abstention inappropriate because the allegedly "ongoing" state proceedings do not afford Plaintiff a legitimate opportunity to raise federal claims. "The rationale behind Younger abstention is that a pending state prosecution will provide the accused with a sufficient chance to vindicate his federal constitutional rights." Rockemore v. Tobin, No. 5:16-CV-00325, 2018 WL 4169059, at *4 (M.D. Ga. Aug. 30, 2018) (citation and internal quotation marks omitted). As Plaintiff points out, murder has no statute of limitations in Georgia, meaning that under Defendants' view, this case could be stayed for the rest of Plaintiff's life should the State never indict him. (Doc. 19, at 14-15 (citing O.C.G.A. § 17-3-1(a)).) There exists, then, the possibility that Plaintiff will have *no* opportunity for his day in any court, state or federal, should this Court abstain. Further, because the Court has found this case is not subject to Younger, the Court declines to decide whether Defendants waived a Younger defense by removing to this Court.

the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 679. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)). Allegations in a complaint must be taken as true and "read . . . in the light most favorable to the plaintiff[]." Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

## B. Discussion

Defendants move to dismiss all of Plaintiff's claims. (Doc. 15.)  The Court first considers Defendants' arguments regarding Plaintiff's federal claims.

### 1. Federal Claims

Plaintiff asserts § 1983 claims of false arrest, false imprisonment, and malicious prosecution in violation of the Fourth and Fourteenth Amendments of the United States Constitution against all Defendants. (Doc. 9, at 17-25.)

As an initial matter, though Defendants do not raise this in their motion to dismiss, the Court notes Plaintiff's federal false arrest and false imprisonment claims fail as a matter of law under the facts alleged. "False arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 549 U.S. 384, 388-89 (2007) (referring "to the two torts together as false imprisonment"). "The sort of unlawful detention remediable by the tort of false [arrest or] imprisonment is detention *without legal process*." Id. at 389 (citations and internal quotation marks omitted). "A 'false arrest' claim challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." Sylvester v. Fulton Cnty. Jail, 94 F.4th 1324, 1330 (11th Cir. 2024) (citation omitted). Malicious prosecution is an "entirely distinct tort . . . which remedies detention accompanied, not by absence of legal process, but by *wrongful*

16

*institution* of legal process." Wallace, 549 U.S. at 390 (citations omitted). "Under Eleventh Circuit precedent, the issuance of a warrant constitutes legal process, and so a plaintiff who claims false arrest pursuant to a warrant is making a claim of malicious prosecution rather than false arrest." Giles v. Manser, 757 F. App'x 891, 895 (11th Cir. 2018) (citations omitted). When a plaintiff asserts federal false arrest and malicious prosecution claims arising from a warrant-based arrest, it is proper for the district court to find the claim is one for malicious prosecution only. Id. (finding district court erred by dismissing plaintiff's federal false arrest claim based on qualified immunity when the claim should have been dismissed based on plaintiff's allegation he was arrested pursuant to a warrant). The distinction is important because whichever claim is brought informs the court's consideration of the factual record. Sylvester, 94 F.4th at 1330 (citations omitted) (explaining that false arrest claims involve "whether an objectively reasonable officer could have made the same seizure under the same circumstances," while malicious prosecution claims "ask whether the affidavit that led to the arrest warrant was materially false and misleading").

Plaintiff asserts he was arrested pursuant to a warrant signed by a magistrate judge. (Doc. 9, at 6, 12-13.) Therefore, regardless of the warrant's propriety, he was not arrested or detained without legal process. See Sylvester, 94 F.4th at 1330

17

(citation omitted).    The Court therefore **DISMISSES** Plaintiff's federal claims for false arrest and false imprisonment in Counts One and Two of the Complaint.[6]  The Court now turns to Defendants' arguments regarding Plaintiff's federal malicious prosecution claim.

Defendants assert Plaintiff's § 1983 malicious prosecution claim should be dismissed for three reasons: first, Defendants are entitled to qualified immunity; second, the prosecution against Plaintiff has not terminated in his favor; and third, Plaintiff has not established a basis of liability as to Defendants Crispin and Williams.    (Doc. 15, at 5-13.)    The Court first addresses Defendants' argument as to qualified immunity.

a. *Qualified Immunity*

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v.

---

[6] The Court understands Plaintiff's brief as representing that he asserts two separate § 1983 false imprisonment claims: one under the Fourth Amendment, in tandem with his § 1983 false arrest claim, and one under the Fourteenth Amendment.  (See Doc. 20, at 10-15.)  This claim, however, is properly viewed as a single cause of action: "A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law" and "grounded in the Fourth Amendment's guarantee against unreasonable seizures." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979) and Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)).  Regardless, Plaintiff's attempt to distinguish between a Fourth Amendment false imprisonment claim and a Fourteenth Amendment false imprisonment claim does not alter the Court's finding that his arrest pursuant to a warrant bars such claim.

City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alteration and internal quotation marks omitted). This protection "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). Because "[t]he line between lawful and unlawful conduct is often vague," qualified immunity "demands that a bright line be crossed." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). Once established, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Courts then utilize a two-part framework to evaluate the qualified immunity defense. First, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S.

194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id. Depending on the unique circumstances presented in each case, however, courts are "permitted to exercise their sound discretion" in deciding which of the two Saucier prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); accord Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). "Because § 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (internal citation and quotation marks omitted).

In § 1983 suits, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) (citations omitted), overruled on other grounds by Iqbal, 556 U.S. at 662. To protect public officials from meritless claims, the complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (citation omitted); see also Staco v. Miami-Dade Cnty., 536 F. Supp. 2d 1301,

1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a plaintiff pleads facts or makes admissions that demonstrate that a defense is applicable on the face of the pleadings.") (citing Marsh v. Butler Cnty., 268 F.3d 1014, 1022 (11th Cir. 2001)). Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the Court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007).

Because it is undisputed that Defendants acted within their discretionary duties during the events at issue, the Court considers whether each Defendant is entitled to qualified immunity. (Doc. 15, at 6; Doc. 20, at 9.)

### i. Defendant Loomer

Plaintiff alleges Defendant Loomer violated his Fourth Amendment rights by arresting and detaining him pursuant to an invalid warrant and by charging him with committing crimes without probable cause. (Doc. 9, at 22-23.) The Court turns to whether Plaintiff alleges facts that amount to such a Fourth Amendment violation.

### I. Violation of a Constitutional Right

A federal malicious prosecution claim requires Plaintiff to prove "a violation of [his] Fourth Amendment right to be free of

unreasonable seizures." <u>Williams v. Aguirre</u>, 965 F.3d 1147, 1157 (11th Cir. 2020) (citation and internal quotation marks omitted). To establish this Fourth Amendment violation, Plaintiff must show "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." <u>Harris v. Hixon</u>, 102 F.4th 1120, 1133 (11th Cir. 2024) (citation omitted). An arrest warrant amounts to constitutionally infirm legal process when "the officer who applied for the warrant should have known that his application failed to establish probable cause." <u>Aguirre</u>, 965 F.3d at 1165 (citations omitted). "Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense." <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042 (11th Cir. 1997) (citations omitted).

An arrest warrant is also constitutionally infirm when "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." <u>Aguirre</u>, 965 F.3d at 1165 (citations omitted); <u>see</u> <u>Tealer v. Byars</u>, No. 22-14076, 2025 WL 415740, at *5 (11th Cir. Feb. 6, 2025) (quoting <u>Manuel v. City of Joliet</u>, 580 U.S. 357, 367 (2017)) ("A Fourth Amendment violation

22

happens if the 'legal process itself goes wrong — when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.'"). "[N]egligent, or insignificant and immaterial, [omissions] will not invalidate a warrant," but "intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997) (citation omitted). Under this scenario, "when the facts omitted from the [warrant] affidavit are clearly critical to a finding of probable cause[,] the fact of recklessness may be inferred from proof of the omission itself." Id.; see Tealer, 2025 WL 415740, at *8 (citation and internal quotation marks omitted) (noting the question is "whether the judicial officer who made the probable-cause determination had sufficient, truthful information to establish probable cause").

For qualified immunity to apply, Defendant Loomer "need not have [had] actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994) (citation and emphasis omitted). "'Arguable'

23

also means that good-faith (hence, honest, non-obvious) mistakes contained in, and minor omissions from, arrest/search warrants will not be sufficient to pierce qualified immunity." Joseph v. Kimple, 343 F. Supp. 2d 1196, 1202 (S.D. Ga. 2004), aff'd, 391 F.3d 1276 (11th Cir. 2004) (citing Madiwale, 117 F.3d at 1324). "This standard permits law enforcement officers to make reasonable mistakes with regard to the existence of probable cause without being held personally liable." Bradley v. Tucker, No. 4:14-CV-165, 2015 WL 64944, at *8 (S.D. Ga. Jan. 5, 2015) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

Defendant Loomer argues he did not commit a constitutional violation because Welch's testimony implicating herself and Plaintiff in Powell's kidnapping and murder was sufficient to establish arguable probable cause for Plaintiff's arrest. (Doc. 15, at 8.) Plaintiff contends Welch's testimony could not establish arguable probable cause because it was incredible on its face and uncorroborated. (Doc. 20, at 12-14.) Plaintiff further asserts that Defendant Loomer recklessly omitted material information regarding Welch's testimony from his warrant affidavit to manufacture probable cause for Plaintiff's arrest. (Id. at 14.) The Court first considers whether the content of Welch's testimony was such that Defendant Loomer should have known the warrant affidavit failed to establish probable cause.

24

The Eleventh Circuit has found a co-defendant's confession implicating himself and a suspect in a crime may be sufficient to establish probable cause. Craig, 127 F.3d at 1044. However, confessions that are "outlandish" or that "so far contradict[] known facts that no reasonable officer would believe [them]" do not "pass muster." Id. at 1045. According to the court in Craig, an example of such an outlandish confession would be that of a "mental patient that he and the suspect, aided by an army of little green men, committed the crime." Id. Plaintiff does not allege Welch implicated any "little green men" during her interviews with Defendants Loomer and Crispin. But Plaintiff does allege Welch was high on heroin and so obviously "not in her right mind" that either Defendant Loomer or Defendant Crispin "questioned her sanity" during the interviews. (Doc. 9, at 5-6.) Furthermore, BCSO's inability to corroborate Welch's testimony with physical evidence does not necessarily mean her testimony contradicted known facts, but it does mean Defendant Loomer knew he had no evidence to bolster Welch's teetering credibility when he sought Plaintiff's arrest. The Court therefore finds Plaintiff properly alleges Welch's testimony, without more, failed to establish arguable probable cause.

The Court also finds Defendant Loomer recklessly omitted information in his affidavit that was material to the probable cause determination. Omitting facts related to Welch's

25

credibility concealed from the magistrate judge that, in ADA Myers' words, "*The real essence* of [Welch's] story is that her story continuously changes, over and over and over, about what she saw, what she didn't see." (Doc. 9-2, at 10 (emphasis added).) ADA Myers' review of Welch's statement revealed that "any reasonable attorney would find that [Welch] ha[d] credibility issues." (<u>Id.</u> at 12.) But Defendant Loomer's omissions deprived the magistrate judge of any opportunity to independently make such an assessment.

Finally, even setting aside Welch's credibility, the Court finds the conclusory nature of Defendant Loomer's warrant affidavit fails to establish arguable probable cause. The warrant charged Plaintiff with kidnapping in violation of O.C.G.A. § 16-5-40, armed robbery in violation of O.C.G.A. § 16-8-41, and murder in violation of O.C.G.A. § 16-5-1(a). (Doc. 9, at 7.) The Court examines those statutes and the probable cause basis Defendant Loomer provided for each.

Georgia law defines kidnapping as "when [a] person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." O.C.G.A. § 16-5-40(a). Defendant Loomer's affidavit stated that Plaintiff committed the offense of kidnapping by "forcing [Powell] into a truck and transporting him to another location." (Doc. 9, at 7.) It did not state where Plaintiff forced Powell into the truck or the location where Plaintiff transported Powell.

26

As to armed robbery, Georgia law defines the offense as having occurred "when, with intent to commit theft, [a person] takes property of another from the person . . . of another by use of an offensive weapon, or any . . . device having the appearance of such weapon." O.C.G.A. § 16-8-41(a). Defendant Loomer's affidavit asserted Welch witnessed Plaintiff "t[ake] part in the Armed Robbery" of Powell, but it included no information about the property Plaintiff took or the weapon Plaintiff used. (Doc. 9, at 7.)

Finally, a person commits murder under Georgia law "when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." O.C.G.A. § 16-5-1(a). Defendant Loomer's affidavit recites the statutory definition of murder before stating that Welch witnessed Plaintiff "t[ake] part in the . . . Murder of [Powell] before [Powell] was disposed of in a body of water." (Doc. 9, at 7.) The affidavit includes no facts about how Plaintiff caused Powell's death.

Even assuming Defendant Loomer's affidavit included sufficient facts for the kidnapping charge, sorely missing from his affidavit were the most basic facts to support a finding of probable cause for armed robbery and murder. See Luke v. Gulley, 50 F.4th 90, 95 (11th Cir. 2022) (finding conclusory warrant affidavit "devoid of relevant and reliable facts from which one could infer [the defendant committed the crime]" failed to

27

establish probable cause). The Court finds no reasonable officer could have believed the "facts" asserted in the affidavit amounted to probable cause for Plaintiff's arrest for armed robbery and murder.

The Constitution does not demand perfection from officers, but it does require reasonableness. Hixon, 102 F.4th at 1125. Defendants ask the Court to find a reasonable officer could have reasonably believed Plaintiff kidnapped, robbed, and murdered Powell six years earlier based solely on conflicting, ever-changing statements from a purported coconspirator who presented as potentially insane, when physical searches of the locations identified in the coconspirator's statements revealed no corroborating evidence. Defendants also ask the Court to find Defendant Loomer's warrant application provided the magistrate judge with "sufficient, truthful information to establish probable cause." Tealer, 2025 WL 415740, at *8 (citation and internal quotation marks omitted). Defendants' requests, along with their attendant implications, are a tall order — one the Court declines to fulfill.

The Court finds Plaintiff pled facts sufficient to show, at the motion to dismiss stage, that no reasonable officer in Defendant Loomer's position could have found the circumstances surrounding Welch's statements amounted to probable cause to seek Plaintiff's arrest for Powell's kidnapping, robbery, and murder.

28

Likewise, Plaintiff also established that no reasonable officer could have found Defendant Loomer's warrant affidavit contained sufficient information to support a finding of probable cause. Plaintiff has therefore sufficiently alleged Defendant Loomer violated his Fourth Amendment right to be free from unreasonable seizure.[7]

## II. Clearly Established Law

Having found Defendant Loomer violated Plaintiff's constitutional rights by failing to provide the magistrate judge with sufficient information to determine whether arguable probable cause existed, the Court must now determine whether the constitutional right was clearly established at the time of Plaintiff's arrest.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202 (citation omitted). This standard is not so strict as to require that "the very action in question ha[ve] previously been held unlawful," but "in the light of pre-existing law[,] the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

---

[7] Because Defendants do not assert Plaintiff's arrest was otherwise justified without legal process, the Court deems the second prong required to establish a Fourth Amendment violation in malicious prosecution claims, as described in <u>Hixon</u>, 102 F.4th at 1133, *supra*, as conceded. (Docs. 15, 21.)

> For malicious-prosecution claims, we ask whether the
> *type* of shortcoming in the warrant application — such as
> offering a conclusory affidavit that clearly is
> insufficient to establish probable cause, or knowingly
> or recklessly making false statements in an arrest
> affidavit if such false statements were necessary to the
> probable cause – was "clearly established."

Butler v. Smith, 85 F.4th 1102, 1112 (11th Cir. 2023) (internal

citations and quotation marks omitted and alterations adopted).

The Eleventh Circuit has held a right can be deemed clearly

established in one of three ways:

> (1) case law with indistinguishable facts clearly
> establishing the constitutional right; (2) a broad
> statement of principle within the Constitution, statute,
> or case law that clearly establishes a constitutional
> right; or (3) conduct so egregious that a constitutional
> right was clearly violated, even in the total absence of
> case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation

omitted).

Defendant Loomer argues he violated no clearly established

right because Plaintiff does not point to "any cases similarly

dealing with the issues of obtaining arrest warrants based upon

the questionable statements made by an admitted accomplice." (Doc.

21, at 7.) He also argues an officer's conduct in obtaining an

arrest warrant for someone implicated in a crime by a codefendant

does not amount to such "obviously unreasonable or egregious

conduct" as to satisfy the second or third prongs. (Id.)

Plaintiff contends it has long been established "that improperly

fabricating or manufacturing probable cause" by "falsifying or

omitting critical facts from a warrant application" is unconstitutional. (Doc. 20, at 11, 21.)

Supreme Court precedent has made clear the Fourth Amendment "require[s] that the judicial officer issuing [an arrest] warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564 (1971) (citations omitted); see also Aguirre, 965 F.3d at 1162. And well before 2021, the Eleventh Circuit found that "[i]ntentional or reckless material misstatements or omissions in a warrant affidavit . . . could violate the Fourth Amendment." Paez v. Mulvey, 915 F.3d 1276, 1287 (11th Cir. 2019) (citation omitted). Relatedly, the Supreme Court has held that qualified immunity does not protect officers who submit warrant applications that are "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 345 (1986) (internal citation omitted). Therefore, the Court finds the alleged constitutional violation was clearly established by the date of Plaintiff's arrest on July 16, 2021.

Because Plaintiff alleges a violation of a clearly established right, the Court **DENIES** Defendants' motion to dismiss Count Three based on qualified immunity as to Defendant Loomer.

31

ii. Defendant Crispin

Plaintiff asserts Defendant Crispin violated his Fourth Amendment right to be free from unreasonable seizure in two ways: first, through his personal involvement in the investigation leading to Plaintiff's arrest, and second, by failing to either stop Defendant Loomer from applying for Plaintiff's arrest warrant or otherwise intervene in Plaintiff's arrest. (Doc. 9, at 23; Doc. 20, at 17, 19-21.) Defendant Crispin argues he is entitled to qualified immunity because arguable probable cause existed for Plaintiff's arrest and he was in no position to intervene in Defendant Loomer's procurement of the warrant. (Doc. 15, at 7-9, 11.) Defendant Crispin also asserts the Eleventh Circuit has not yet expanded failure to intervene claims to constitutional violations that do not involve excessive force. (Doc. 21, at 8 n.6.)

The Court has already found Plaintiff sufficiently alleges no arguable probable cause existed for his arrest and that the warrant application contained material omissions. Thus, as detailed above, Plaintiff properly alleges a constitutional violation as to Defendant Loomer because Defendant Loomer, who applied for the warrant, "should have known that his application failed to establish probable cause," and he also "recklessly made . . . omissions necessary to support the warrant." Aguirre, 965 F.3d at 1165 (citations omitted). Plaintiff does not allege

32

Defendant Crispin applied for the warrant, so the only way Defendant Crispin can be liable for his personal involvement in the warrant's procurement is if he "intentionally or recklessly made misstatements or omissions necessary to support the warrant." Id. (noting intentional or reckless omissions amounting to a constitutional violation can be made by an official "who did not apply for the warrant"). The Court therefore looks to the Complaint to determine whether Plaintiff pled sufficient facts.

The Complaint alleges Defendant Crispin investigated Powell's disappearance; interviewed Welch; searched the physical locations Welch described; knew Welch was not in her right mind; filed a report based on Welch's testimony that identified Plaintiff as being complicit in the kidnapping, armed robbery, and murder of Powell; failed to investigate Plaintiff's whereabouts at the time Powell disappeared; and intended to apply for warrants based on Welch's statements. (Doc. 9, at 4, 6, 9.) Plaintiff does not assert Defendant Crispin intentionally or recklessly omitted information in support of the *warrant*. While Defendant Crispin's report appears to have omitted information about Welch's credibility, Plaintiff does not plead that this report was related to the warrant's procurement. The Court therefore finds Plaintiff fails to plead facts that establish Defendant Crispin's personal involvement in the investigation renders him liable for the alleged Fourth Amendment violation.

33

The Court also finds Defendant Crispin is entitled to qualified immunity under a failure to intervene theory. "As discussed, a police officer is entitled to qualified immunity when performing discretionary functions unless the officer has violated a clearly established right of which a reasonable police officer would have known." Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999). The appropriate question here is whether a reasonable officer involved in an investigation that had not generated probable cause to arrest a suspect could have believed it was lawful not to intervene in his colleague's omission of material facts from the warrant application or submission of the warrant application itself. See Gilmore v. Milton, No. 6:18-CV-115, 2020 WL 7249627, at *9 (S.D. Ga. Dec. 9, 2020).

"While the Eleventh Circuit has held that an officer can be personally liable for failing to intervene in excessive force cases, the Eleventh Circuit has not expanded such liability to cases lacking an element of excessive force." Id. at *8 (citations omitted) (noting split in district court decisions on whether such expansion is appropriate). And "[t]he fact that district courts within . . . the Eleventh Circuit seem to come out differently on the present issue shows that the issue is by no means 'beyond debate.'" Mehta v. Foskey, 877 F. Supp. 2d 1367, 1378 (S.D. Ga. 2012) (citations omitted). Indeed, Plaintiff directs the Court to no Eleventh Circuit case finding unconstitutional an officer's

failure to stop his colleague from omitting material facts from a warrant application or submitting that application to a judge. Therefore, even if Defendant Crispin had a duty to intervene in Defendant Loomer's submission of the deficient warrant application, "it cannot be said that [he] violated clearly established law by failing to intervene in [this] particular circumstance." Id. (citation omitted). Defendant Crispin is thus entitled to qualified immunity as to Plaintiff's malicious prosecution claim against him under a failure to intervene theory.

Because the Complaint does not plead facts to establish Defendant Crispin is liable due to his personal involvement in the constitutional violation and because Defendant Crispin's failure to intervene did not violate clearly established law, the Court **GRANTS** Defendants' motion to dismiss Count Three as to Defendant Crispin.

### iii. Defendant Williams

Plaintiff asserts Defendant Williams is liable for Plaintiff's malicious prosecution under a failure to intervene theory or, in the alternative, a supervisory liability theory. (Doc. 9, at 22-24; Doc. 20, at 20 n.3.) Defendant Williams argues Plaintiff fails to establish a basis of liability under either method. (Doc. 15, at 9-11.)

Because the Court has already decided Defendant Crispin could not have violated clearly established law by failing to intervene

35

in Defendant Loomer's procurement of the warrant, the same holding applies to Defendant Williams. The Court therefore **GRANTS** Defendants' motion to dismiss Count Three as to Defendant Williams under a failure to intervene theory and turns to the issue of supervisory liability.

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Christmas v. Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (citations omitted). The necessary causal connection can be established by alleging

> [(1)] the existence of a custom or policy that resulted in deliberate indifference to the [victim's] constitutional rights, [(2)] facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or [(3)] a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citation omitted); see also Christmas, 51 F.4th at 1355. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998).

Though Defendant Williams only presents argument as to the absence of widespread abuse and lack of custom or policy, Plaintiff

contends the Complaint establishes Defendant Williams's liability under the second theory: when facts support an inference that the supervisor directed or knew of the subordinates' allegedly unlawful activity and failed to stop it. (Doc. 15, at 10-11; Doc. 20, at 18.)

The Court agrees with Plaintiff. The Complaint specifically pleads: Defendant Williams had supervisory authority over Defendant Loomer, was informed of Welch's inconsistent statements implicating Plaintiff in Powell's disappearance, authorized searches of the physical locations identified by Welch and knew those searches produced no additional evidence, knew Defendant Loomer intended to apply for warrants to arrest Plaintiff based off Welch's testimony alone, and approved Defendant Loomer's decision to seek the arrest warrants. (Doc. 9, at 4, 9, 12.) These facts support an inference that Defendant Williams was aware of his subordinate's unlawful conduct – Defendant Loomer's plans to arrest Plaintiff without probable cause - and failed to prevent such conduct, thereby establishing a basis for supervisory liability. Thus, the Court **DENIES** Defendants' motion to dismiss Count Three as to Defendant Williams based on supervisory liability.

### b. *Favorable Termination*

The Court next considers Defendants' argument that Plaintiff's malicious prosecution claim fails because he cannot

37

show the prosecution against him has terminated in his favor. (Doc. 15, at 16.)

In addition to the violation of his Fourth Amendment right to be free from unreasonable seizures, a plaintiff asserting a § 1983 malicious prosecution claim must also prove the elements of the common law tort of malicious prosecution: that "the officers instituted or continued a criminal prosecution against him, with malice and without probable cause, that terminated in his favor and caused damage to him." Aguirre, 965 F.3d at 1157 (citations and internal quotation marks omitted). The "favorable termination" requirement "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Thompson v. Clark, 596 U.S. 36, 49 (2022); see also Laskar v. Hurd, 972 F.3d 1278, 1295 (11th Cir. 2020) (finding state court's dismissal of criminal charges due to elapsed statute of limitations constituted favorable termination for malicious prosecution claim). Indeed,

> the favorable-termination requirement will bar a suit
> for malicious prosecution only when the prosecution
> remains ongoing or terminates in a way that precludes
> any finding that the plaintiff was innocent of the
> charges that justified his seizure — that is, when the
> prosecution ends in the plaintiff's conviction on or
> admission of guilt to each charge that justified his
> seizure.

Laskar, 972 F.3d at 1293 (citations omitted). "[A] plaintiff can satisfy the favorable-termination requirement by proving that the prosecution against him formally ended in a manner not inconsistent with his innocence on at least one charge that authorized his confinement." Id.

Plaintiff argues he meets the favorable termination requirement because he alleged the State voluntarily abandoned prosecuting him for crimes arising out of Powell's disappearance. (Doc. 20, at 16.) He directs the Court to Vadner v. Dickerson, which found prima facie evidence of a favorable termination when a prosecutor failed to timely reinstitute a prosecution dismissed for improper venue. (Doc. 19, at 9-10); 441 S.E.2d 527, 528 (Ga. Ct. App. 1994). Defendants argue Vadner does not apply because, unlike in Vadner, Plaintiff's criminal case was never dismissed.[8] (Doc. 21, at 10.)

"[Favorable] termination may be caused by the voluntary abandonment of the case by the party who instituted the prosecution." Waters v. Winn, 82 S.E. 537, 538 (Ga. 1914); see, e.g., Pombert v. Glock, Inc., 171 F. Supp. 3d 1321, 1329 (N.D. Ga. 2016) (finding prosecutor's failure to reinstate prosecution after filing a nolle prosequi amounted to claim of favorable

---

[8] Defendants also argue that a criminal proceeding placed on the dead docket in Georgia may remain "ongoing" under Younger, which would support finding Plaintiff has not pled favorable termination. (Doc. 21, at 10.) Because the Court already found that Younger abstention is not appropriate, it declines to consider this argument.

termination); Hodges v. Collins, No. 5:12-CV-202, 2013 WL 557183, at *9 (M.D. Ga. Feb. 12, 2013) (finding favorable termination alleged when state court granted federal plaintiff's special demurrer and prosecutor had not reinstated proceedings over a year later, despite prosecutor's affidavit that federal plaintiff may still be indicted).

While the pleadings before the Court are not on all fours with the facts in Vadner, Pombert, or Hodges, the Court nonetheless finds the principles espoused therein indicate that Plaintiff has alleged sufficient facts to establish the criminal proceedings have terminated in his favor. The Court bases its decision on the following. First, ADA Myers told Judge Craig in June 2023 that the evidence "[was] not sufficient to go forward" with Plaintiff's prosecution. (Doc. 9-2, at 16.) Second, because of this dearth of evidence, ADA Myers did not anticipate presenting charges against Plaintiff to a grand jury "in any quick fashion." (Id. at 14.) The record before the Court indicates that, to date, no additional evidence has been acquired that would change ADA Myers' assessment from two years ago. Finally, ADA Myers represented he intended to confer with the BCSO and the District Attorney after Plaintiff was released on bond to evaluate whether additional investigative steps should be taken, but even if the investigation continued after Plaintiff's release (and it is unclear whether it did), an investigation into a crime does not amount to the

40

continuation of a prosecution. (Id.) That even now, two years later, Plaintiff has yet to be arrested or indicted for any crime related to Powell's disappearance further supports a finding that the prosecution against him has been voluntarily abandoned and the State does not intend to recommence proceedings. In short, similar to the facts in Hodges, ever since Judge Craig found no evidence existed to implicate Plaintiff in Powell's disappearance, the State - though it *could* still do so - has not pursued Plaintiff's prosecution further.

Defendants may at some point present compelling evidence indicating the proceedings against Plaintiff have not terminated, but based on the record before the Court, they have yet to do so. For these reasons, the Court **DENIES** Defendants' motion to dismiss Count Three for failure to plead favorable termination as to Plaintiff's federal malicious prosecution claim.

### 2. State Law Claims

Plaintiff also asserts state law claims against all Defendants for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Doc. 9, 25-29.) Defendants argue Plaintiff's state law claims are barred by official immunity and, in the alternative, that Plaintiff fails to state a claim for false arrest, false imprisonment, or malicious prosecution. (Doc. 15, at 13-16.) Plaintiff contends Defendants are not entitled to official

41

immunity because they had no arguable probable cause to arrest him. (Doc. 20, at 21-23.)

Official immunity protects county officers and employees from certain state law claims arising out of the performance of a discretionary function. Keele v. Glynn Cnty., 938 F. Supp. 2d 1270, 1308-09 (S.D. Ga. 2013). However, "[i]t does not protect officials who negligently perform or fail to perform their ministerial functions" or those who, in performing a discretionary function, "act with actual malice or intent to cause injury in the performance of their official functions." Id. at 1309 (citations and internal quotation marks omitted). Police detectives act in their discretionary authority when they investigate cases and obtain and execute arrest warrants. Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011) (citation omitted). Therefore, Defendants are entitled to official immunity unless they acted with actual malice or an intent to cause injury. Defendants argue no allegations establish actual malice, while Plaintiff contends the lack of any probable cause amounts to malice. (Doc. 15, at 14; Doc. 20, at 22-23.) Following the Parties' lead, the Court focuses on the question of actual malice.

"[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999) (citation omitted). "Such act may be accomplished with or without ill will

42

and whether or not injury was intended." Id.  Under Georgia law, actual malice may be inferred "where evidence indicates that [a] police officer arrested the plaintiff despite having knowledge that the plaintiff did not commit the crime for which he was arrested." Abercrombie v. Beam, 728 F. App'x 918, 928 (11th Cir. 2018) (citations omitted).  However, "[t]hat an officer's decision to arrest may be 'misguided,' 'mistaken,' 'flawed,' or unsupported by probable cause is not enough to overcome official immunity." Croland v. City of Atlanta, 782 F. App'x 753, 760 (11th Cir. 2019) (citations omitted); see also Wilson v. Cromer, 847 S.E.2d 213, 217 (Ga. Ct. App. 2020) (finding no reasonable inference of actual malice when there was no evidence officer "acted deliberately upon any ill will or personal animus toward" arrestee, despite having "scant evidence to support the arrest").

The Court finds Plaintiff has not pled facts sufficient to overcome official immunity because his allegations do not create a reasonable inference that Defendants acted with actual malice. As discussed above, the pleadings allege Defendants did not have arguable probable cause to seek his arrest.  But arresting someone without probable cause is different from arresting someone whom the officer knows to be innocent.  And Plaintiff does not plead facts suggesting Defendants affirmatively knew he did *not* commit the crimes for which he was arrested; rather, he asserts they did not have *enough* evidence to reasonably suspect him of committing

the crimes.   Consequently, Defendants' lack of probable cause, without more, is insufficient to establish actual malice.   See Abercrombie, 728 F. App'x at 928 (finding no actual malice because "there was not such a lack of evidence of [plaintiff's] guilt that a jury could infer that [the officer] arrested [plaintiff] and pursued his prosecution with the knowledge that he was not guilty and so intended to do wrong").

Plaintiff also asserts the record supports a finding of actual malice because Defendants' eagerness "to publicly show progress in resolving Mr. Powell's case . . . indicates that Defendants intended to proceed with the arrest no matter what the evidence showed." (Doc. 20, at 23.)  The reward offer and swift public announcement of Plaintiff's arrest could perhaps give rise to an inference that Defendants' desire to show progress in the case overshadowed their commitment to conducting a sound investigation. However, while "[o]fficers who recklessly conduct investigations in an effort to quickly close cases may be subject to criticism, . . . they do not act with the actual malice necessary to strip them of official immunity." Stefani v. City of Grovetown, No. 1:15-CV-164, 2016 WL 4611575, at *10 (S.D. Ga. Sept. 2, 2016).

For these reasons, the Court finds Defendants are entitled to official immunity for Plaintiff's state law claims and **GRANTS** their motion to dismiss Counts Four, Five, Seven, and Eight.

44

### 3. Attorney's Fees and Punitive Damages

In Counts Nine and Ten, Plaintiff seeks attorney's fees and expenses under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11, as well as punitive damages under federal and state law. (Doc. 9, at 30.) Defendants argue these claims fail because Plaintiff is not entitled to recovery on his underlying claims. (Doc. 15, at 15 n.7.)

Prevailing parties in § 1983 actions may receive reasonable attorney's fees. 42 U.S.C. § 1988(b). Moreover, O.C.G.A. § 13-6-11 permits a plaintiff to recover litigation expenses "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Because the Court has denied Defendants' motion to dismiss Plaintiff's § 1983 malicious prosecution claim, the Court also **DENIES** Defendants' motion to dismiss Plaintiff's claims for attorney's fees, expenses, and punitive damages derivative of that claim.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**. Counts One, Two, Four, Five, Seven, and Eight are **DISMISSED**. Plaintiff's § 1983 malicious prosecution claim and related derivative claims for attorney's fees, expenses, and punitive damages will proceed

45

against Defendants Loomer and Williams.  The Clerk **SHALL TERMINATE** Defendant Crispin as a Party to this action.  Defendants' motion to stay (Doc. 16) is **DENIED AS MOOT**.

ORDER ENTERED at Augusta, Georgia, this $2/5^T$ day of July, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA